arguments in our next case United States v. Loya-Ramirez. May it please the court. My name is Mark Scavovia. I represent Jorge Loya-Ramirez. Ladies and gentlemen, the defendant is guilty and everybody in the courtroom knows it. This statement is not just an opinion. It is a conclusion of the guilt of the defendant. Your honors, how does it get any worse than this? This is a severely prejudicial statement. The worst one is I think he's guilty said the prosecutor. Yes, your honor. It could have gotten worse. Yes, your honor. I guess you'd get worse than that even if you say before that I had lunch with the judge and the judge says yeah, okay. You find guilty or one very mad at you or something like that. But it is a severely prejudicial statement. And another way it could get worse is if you're in a slim case, the government's proof is not very strong. But here, don't we start off with the proposition by evaluating how strong is the case? And we have the phones, we have the cooperating witnesses, we have the video, we have the car tracker, we have large amounts of illegal substances. That's square one, isn't it? And then we assess the comments that you lead with. Certainly, yes, your honor. And that is definitely the strength of the case is definitely a consideration. And do you agree that it is a pretty powerful case here as far as the evidence that was presented? It is a strong case, but then again, why would the Assistant United States Attorney make such a statement at the end of his rebuttal argument if it was so strong? And then besides that, it's a sliding scale in the wards. Maybe if the evidence was really, really close, then a lesser statement would make more of a difference. But there comes a point where a statement can be so egregious that no matter how strong the case is, especially where it was at, it is a very, very prejudicial statement. It can have an effect on a jury no matter how strong the case is. I think the authority you cite for that proposition was before the Supreme Court's 1985 decision in Yonge too, and I think the government points that out, where they held that the prosecutorial misconduct, these types of statements, are subject to the plain error test. And you do have to show the third and fourth prongs. And you don't even make an attempt to do that in your brief. And you didn't respond to their argument, and you didn't file a reply brief. No, your My position on that is that it's such an egregious statement that no matter how strong a case may be, that it shouldn't be allowed to be said that. It could take the jury. Where is the authority for that? I'll start with some authority that the government just recently submitted, and that is United States v. Christie. That was a few weeks ago. And the court actually said, the court must weigh improper comments against the strength of the evidence against the defendant. But then it goes on to say, the prevalence and degree in proper statements in a trial can affect the prejudice analysis. Prosecutorial misconduct would be so egregious as to warrant reversal. Kennedy, the problem is we don't even, you didn't do the analysis. You didn't weigh it against the evidence. We don't have anything from you even attempting to say, despite the weight of the evidence, and what seems to be overwhelming evidence here, that somehow this would have had an impact. My position remains that it's such an egregious statement no matter how strong the case was. And besides that, the defendant wasn't convicted on all counts either. He was acquitted on one count. So it could have been the most egregious that count against you. If it were so egregious that it turned the whole case on its head, he would have been guilty on all counts. Or it could have been that they were thinking about all the different charges, and maybe they just fell that way on that one, but just clearly found that he was guilty on the others. It could cut either way, is my argument, Your Honor. More importantly, after the assistant United States Attorney made this statement, he made the statement that this, in effect, the statement says that people watching, everybody that's watching, everybody that's watching the court trial, the jury, the marshals, the court reporter, the clerk of the jurors, defense counsel, and even the judge, he said they all thought, he said they all thought they were guilty. He was guilty. Every single one of them. And most importantly, it's after that, it's over. The judge does not say anything else. The judge does not give any curative instructions saying, well, I don't think he's guilty. I'm neutral here. None of that happened. So here we are. We have the jury. Well, don't you have jury instructions, the usual jury instructions that were evidence? Yes, Your Honor, that is. And that is standard jury instructions, but that is not a curative instruction. Did you ask for a curative instruction? I was not, I was not trial counsel, Your Honor. I was afraid you would say that. Did trial counsel ask for a curative instruction? No, Your Honor. And I go on. If they gave him claims of such a strong case, then why did they feel the need to make this statement at the very end of it? It was obvious that the case was planned out. He said, worst effect, if everybody, everybody in the courtroom knows he's guilty, then cut off the snake. It was a planned statement. If it was such a strong case, why did he say that? Are you arguing for a reversal per se? Yes, Your Honor. How do you distinguish United States versus Young then, the 1985 Supreme Court case, where there were even more egregious statements made by the prosecutor, but the was all about what they talk about mostly is what they call an invited response. And almost just the opposite just happened in that case, where defense counsel pretty much said, everybody, actually the defense counsel said, I submit to you, there's not a person in this courtroom, including those sitting at the table who think Billy Young is innocent. That's what he said. And then the prosecution responded to that. And the prosecutor essentially said, well, I was sitting here and I thought he was guilty. So that's what the court talks about the whole time is the response. It's not about what was said. Because defense counsel kind of opened the door in that kind of argument, he was allowed to respond. And that's what the court says. As we suggested earlier, this positive issue under the, which holds this court, is not whether the prosecutors amounted to error, but whether they rose to the level of plenary error when he responded to defense counsel. And then he says, in this setting where he responded on the strike area and the strike area was not plenary error. And then it goes on by saying, nevertheless, we conclude that the potential harm from this was by the jury's understanding the prosecutor was countering the defense counsel's repeated attacks. So that's what it's all about. And then at the very end of their analysis, all the very end, then they finally say kind of in passing, finally, the overwhelming evidence of the respondent's intent to defraud APCO and submit false certificates to the government eliminates any lingering doubt. But the thrust of that case is all about what the defense counsel said in the response. And that was actually one of my points. Can you cite any authority that suggests that young can be distinguished in that way? And that if the essentially, if it wasn't an invited comment, that structural error, that's what you're arguing. Yes, your honor. What I'm just arguing is that is that young was all about responding to prosecute to the defense counsel statements. That's what it was about. That's what I'm saying. I'm just saying I'm not aware of any authority limiting it to that factual scenario. Yes, your honor. And I don't think I don't see an authority to eliminate the other way either. It's my own response to that. And just getting back to what now getting back to what the government has recently has recently submitted this court about four weeks ago. There's someone on authority of USB Christie. That case is completely distinguished in the fact that it's nothing. It's all about cumulative errors. There's 12 of them. What they say is they claim that Miss Christie argues that the cumulative effect of the prosecutors 12 comments violated her due process right to the trial. She contends that each comment was improper, but not does not claim that any one comment standing alone was enough to reverse your conviction. That was all about a whole bunch of minor errors. None of which were like this. And even then this most recent case, it goes on to say the court must weigh any improper comment against the strength of the evidence against the defendant, but then goes on to say the prevalence and degree of improper statements in a trial can affect prejudicial analysis. How long was this trial? This trial was seven days, your honor. And we're talking about two comments in rebuttal argument by the prosecutor. Yes, your honor. One comment, first part of rebuttal. And then the last one is the very last second to last sentence at the end of rebuttal statement. And then it's over. That's it. So this is the last thing pretty much the jury hears. Ladies and gentlemen, ladies and gentlemen, the defendant's guilty and everybody in the courtroom knows it. And going back to what the government is just what has the government is submitted that says even that recent cases, prosecutorial conduct may be so egregious as to warrant reversal. Now, looking at this more broadly since I have five minutes left, it is plain to see that every improper statement does not require a reversal. We know that that's that's pretty obvious. I think I can get away with saying that less egregious statements will require the court to weigh the strength of the case against other factors and such factors as curative instructions, strength of the case. But there are statements that are so egregious as to warrant reversal. Again, that's Christie recent case submitted at 826. Ladies and gentlemen, the defendant's guilty and everybody in the courtroom knows it, especially followed by the district court judges complete silence on the matter and the prosecutors other statement that there was 32 people in the conspiracy. You not heard from any of them, which says you have not heard from the defendant, which is addition to that not nearly as egregious as the one I read that statement. Yes, your honor. I really didn't key into a that it's a comment on the defendant's silence. In fact, I really didn't know what that statement meant. Which which happens in argument. I appreciate that. Yes, your honor. Well, my view of it is just that there's 32 people in this conspiracy, including the defendant. You said she says you haven't heard from all 32 people in the conspiracy, which means you haven't heard from the defendant. That's my point. Well, but wasn't that when you put it in context, could it could it have been in response to what the defendant had said or the defense counsel had said in the closing argument given on behalf of the defense? Only to the fact that we don't think the defendant's guilty. That's the only thing I could think of. Didn't didn't the defense counsel go into the fact of the amount of evidence and they're they're saying there's more, but we didn't hear from them. Not to my recollection, your honor, but you could be right. I just don't remember that off the top of my head. The government asserted it very strongly in its response brief and pointed to to the defense counsel statement. Yes, your honor. In conclusion of all this, there are there are. Statements that are so egregious to war to reversal, especially when a statement is the conclusion of the guilt of the defendant. We've seen other statements have been reversed that they say this witness is lying or this witness should have said or this defendant should have said I was gave exculpatory statements when he was arrested and things like that. But this is the ultimate issue. This goes after the entire case. It's the defendant is guilty at the end of the case in front of a jury that doesn't know anything much about law and they're told that everybody in the courtroom thinks they're guilty. We should not allow the prosecution to get away with that. And if they really thought their case was so strong, if it really was so strong, we don't know what went on with the jury room. We don't know how it happened, but we know they were left with this at the very end of it all. And I will just leave and I'll reserve two minutes for rebuttal by just saying, you know, what the what the prosecutor said in the and the words of the Ludwig court is his. He is a result that his comment resulted in should result result in reversal, which could have been easily avoided. Thank you. Thank you, counsel. May it please the court, Bishop Grewell on behalf of the United States. Before I do anything else, I want to convey to the court that the government recognizes this is an improper comment. It shouldn't have been made. And it's playing on both of them. The second one I don't think is an improper comment. I only think the comment about the guilt is an improper comment. But under young, it is an improper comment. The government should be not should not be commenting on the defendant's guilt in this in this sort of manner. What manner may it could the government attorney have said, ladies and gentlemen, you've seen the evidence. The evidence strongly supports or compels a finding of guilt. The government could have said that as long as it would would have been related to the evidence. And I think and that's the rule. You key it to the evidence. Yes, you've heard. You have to link it to the other that I'm telling you giving you opinions. Yeah, and he didn't do that here. I think honestly in his head. That's what he's trying to do because it's the end of rebuttal. And he's saying you what's the one thing everybody in the courtroom has in common. They've all seen the evidence. And so I think that's what he's trying to do, but he didn't do it. And so that so it's an improper comment. I don't think the record suggests. This was a planned comment because it is rebuttal. This isn't closing. This is an opening statement. This is when you're responding to what you've just heard. So I don't think it's planned, but I don't think that's something that the court needs to get to on this record. I don't think the record suggests. With all of that said, it sounds like counsel is effectively waving a prom three review and his brief suggests as much his reply brief suggests as much and the appendix that he suggested or that he submitted suggested as much the transcripts. There's no analysis of how this comment looks in the context of all of the evidence in context of all of the record in context of the instructions and the way in Christie. This court said he has to show the improper comments influence the jury's verdict here. The comments were limited in scope and nature. It was this line at the end of rebuttal after a seven-day trial. And as I mentioned, it's when all the evidence is in and you can see that wasn't invited in any fashion. I don't think it was invited in any fashion. I know. I mean, I think to the extent he was saying my clients not guilty. He was a taco vendor that doesn't invite us saying he's guilty in that way, but it was limited in scope in nature was this comment at the end of rebuttal after a seven-day trial. He was acquitted on count 138. This comment was a comment. He's guilty as to all counts. If you're going to read as anything, it wasn't look at this one count. He's clearly guilty on that count. It suggested he was guilty of everything, but the jury acquitted on count 138, which is incidentally this. It's an April 23rd use of a communication facility with a gentleman. Mr. Amaya who did not testify at trial. That is what the second comment was in response to the defense counsel during closing argument repeatedly noted. You didn't hear from Mr. Amaya. You didn't hear from Mr. Amaya. And so this was a response. There are a lot of people in this conspiracy and you didn't hear from them all. It wasn't a comment about the defendants silence and this court's precedent Jefferson says, if there's a plausible reading that the government wasn't commenting on the defendant's silence, you shouldn't read this as a comment on the defendant's silence. But so the limited scope in nature, the acquittal of the one account, this court has also said in Christie and other places that it can be cured by the jury instructions. And the court here said at volume two of Mr. Laurie Ramirez's appendix page 136, and also you can see in the government's appendix one three at 680 said the arguments aren't evidence and told the jury you can only rely on the evidence. That's sort of curative. And the chronology of events. I hate to assume how I think things should happen. How did they happen here? Were the arguments, the closing arguments heard and then the jury instructed? I believe the jury was instructed first actually. Before the closing? Yes. I don't think it occurred after the closing. That's too bad. It's not the old way. Go ahead. And but you combine these things, the limited scope in nature, the acquittal, the jury instructions, and the fact that we did really have overwhelming evidence here. This wasn't like the Rios case where you don't know if the guy's at the bar or not and you just have two brothers saying he was. This is a case where we first of all we have a drug stop, where we've got a half a pound of meth and a kilo of cocaine hidden in a hidden compartment in the defendant's car. We have an agent who testifies. He's watching the scene where this Mr. Dominguez is taking some out of the car and stomping on it. Mr. Dominguez later tells us that's when he was ripping out the air filter to create the hidden compartment. He says lawyer Ramirez is right there by the driver's side when he's doing it. And agent Fania says when he's seeing this going on that Mr. Ramirez is there. Moreover, he's stopped with $3,000 worth of cash on him when these drugs are in his car. And so that all suggests he knows that these drugs are in his car and he's doing it. We also have a lot of cross corroborating testimony from the co-conspirators and the video and audio. So you have these events where they'll get a call. Can you bring this stuff over? We see the co-conspirators on video showing up at the place of the people who've called. They leave. We get another call about how it's an ounce short. And so all of these details about all these different events are so consistent that they suggest that the only way that could be so consistent is if everyone just happens to be telling the truth. You have the trip to liberal Kansas that the defendant went on with his wife and two of the co-conspirators has testified. You have a phone call with Granados Ordonez who is one of the co-conspirators with Mr. Lawyer Ramirez where they're pretty unambiguously discussing bringing the cut and discussing the yeast that they're going to cut it with. That's volume one of our record on appeal 144 through 147. And so this was an improper comment, but when you take all of those things together, he has not met his burden and it's his burden to show that prong three has been met. I don't think there's any case law that says we have this per se standard where something is so egregious that we don't even do the prong three analysis. In fact, that's what Young said this court was doing improperly beforehand was not looking at the record as a whole. And yes, Young talked about invited error, but it only talked about in the context of this is one of the things that you consider in the whole record to see if there's prejudice. It also talked about you look at the overwhelming evidence and it talked about you look at the nature of the comment and was this a comment where the prosecutor is suggesting he has knowledge outside the record or not because it wasn't in Young. That was another factor in their favor. This is again not a comment where we're suggesting we have knowledge outside the record. We're not saying the judge knows he's guilty or I know he's guilty. We're saying, although unfortunate, we're saying everybody in the courtroom knows he's guilty. And again, what does everyone have in common? The evidentiary record that was before them. Unless the court has any questions, I'm happy to see the remainder of my time. Thank you. Just real briefly, Your Honors. Given the light of this argument, if the state of the case was that strong against the defendant, should the prosecution be allowed to get away with this kind of a statement? And what happens if they do it again? Should prosecutors be allowed to make statements like this because their case, because they believe their case is so strong, they should not. And just to reiterate one more time for the most recent case that came out, which directly said on page 826, prosecutorial misconduct may be so egregious as to warrant reversal. Thank you. Thank you both for your arguments this morning. The case is submitted.